UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| NICOLE STOUT, | : | Case No. 1:17-cv-155 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| BERRY INSURANCE GROUP, | : | |
| Defendant. | : | |

**ORDER (1) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 19); (2) GRANTING IN PART PLAINTIFF'S MOTION TO STRIKE (Doc. 30); and (3) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUR-REPLY (Doc. 30)**

This civil case is before the Court on Defendant Berry Insurance Group's motion for summary judgment (Doc. 19), and the parties' responsive memoranda (Docs. 25, 26, 30-2). Also pending before the Court is Plaintiff Nicole Stout's motion to strike and leave to file a sur-reply (Doc. 30), and the parties' responsive memoranda (Docs. 33, 34).

### I. BACKGROUND[1]

Stout was hired as a Personal Lines Assistant at Berry on May 11, 2015. (Doc. 27 at ¶ 1). Her responsibilities included reviewing renewal listings to determine if a client needed to be notified of any upcoming changes to their insurance policy. (*Id*.) Upon

---

[1] This Court's Standing Order Governing Civil Motions for Summary Judgment requires the moving party to submit a proposed undisputed statement of facts with the moving party's opening brief. Berry did not do this. After Stout filed her response in opposition with her statement of disputed facts (Doc. 25-2) pursuant to this Court's Standing Order, Berry then filed a notice with its proposed statement of undisputed facts. (Doc. 27). Stout, as part of her motion for leave to file a sur-reply, provided a response to that statement. (Doc. 30-3). Accordingly, the Court's statement of facts set forth in this Order incorporates the material facts undisputed by the parties from those filings.

receipt of an expiration report, it was Stout's responsibilities to inform the customer if their premium was increasing above a certain percentage. (*Id*.) Stout also was responsible for processing lapse notices in order to contact customers whose policies were in danger of lapsing. (*Id*.)

On May 21, 2015, ten days after Stout was hired by Berry, Stout received an email from Jenny Baumgartner, Operations Manager at Berry, informing Stout of errors with her work. (*Id*. at ¶ 3). Stout acknowledged these mistakes, writing back: "I apologize for the errors, I was doing it how Laura had shown me, the caps was my own doing though. I have printed this email and will use it as a reference when I am working on them later today." (*Id*.; *see also* Doc. 16-3 at PageID 231). On June 16, 2015, Stout was informed of another mistake she had made; Stout had attached an incorrect policy to a client's renewal. (*Id*. at ¶ 4). Based on the undisputed facts, Stout did not receive any communication about mistakes or errors in work throughout the remainder of the summer of 2015. (*See generally*, *id*.)

In August 2015, Stout was required to take medical leave to undergo brain surgery. (*Id*. at ¶ 14). Stout provided Berry with necessary information about her medical condition to support her leave, and also informed Berry she would need to take leave in the future to attend medical appointments. (*Id*.) Stout returned to work a few weeks after her surgery. (*Id*. at ¶ 15).

As part of Stout's employment, Stout was responsible for completing coursework to obtain an agent's license. (*Id*. at ¶ 2). Stout understood that it was important to ultimately receive her license. (*Id*.) Berry paid for Stout's training and provided days off

2

to complete coursework. (*Id*.) Stout took a licensing exam in September (shortly after her brain surgery) and November 2015; however, failed on both occasions. (*Id*.) Stout passed the exam on February 26, 2016.

On November 17, 2015, Stout received her first audit from Aimee Meredith, Senior Personal Risk Specialist, citing issues with her processing of certain accounts. (*Id*. at ¶ 5; *see* Doc. 16-3 at PageID 237). On December 21, 2015, Meredith audited Stout again, stating she had come across renewals not processed correctly. (Doc. 16-3 at PageID 238). On January 6, 2016, Meredith emailed Stout with additional errors. (*Id*. at PageID 240). Meredith stated that Berry had lost a few accounts, and she "[could] not be certain that calling the Insured would have helped save the account but it is very important that we are completing the correct procedures on every account." (*Id*.) On January 26, 2016, Meredith audited Stout's work again, pointing to incorrect accounts. (*Id*. at PageID 241). In that email, Meredith told Stout that: "The process for the majority of accounts I have reviewed are correct[,] but I did catch a couple of things." (*Id*.).

On February 25, 2016, Stout provided Berry with a letter from her doctor explaining the need for upcoming treatment related to her medical condition. (Doc. 25-2 at ¶ 3). That same day, Meredith performed another audit of Stout's work, emailing her the following day with a list of account errors. (Doc. 27 at ¶ 12; *see also* Doc. 16-3 at PageID 243). Also that following day, on February 26, 2016, Stout was terminated from her employment with Berry, with Berry citing continued errors in her performance. (Doc. 25-2 at ¶ 13).

3

Following her termination, Stout filed the instant action, alleging (1) disability discrimination under federal and state law; and (2) retaliation under federal and state law. (Doc. 1). Berry moves for summary judgment on both claims.

## II. MOTION TO STRIKE

As an initial matter, the Court discusses Stout's motion to strike (Doc. 30) the second affidavit of Jennifer Baumgartner (Doc. 26-1). This second affidavit is attached to Berry's reply in support of summary judgment. (Doc. 26). In this affidavit, Baumgartner discusses Berry's audits of other Personal Lines Assistants in an effort to show that its audits of Stout were not a pretext for discriminatory termination. (Doc. 26-1). Stout argues that this affidavit must be stricken because it contradicts Baumgartner's deposition testimony. (Doc. 30).

Federal Rule of Civil Procedure 12(f) provides that, upon motion, "the court may order stricken from any pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Striking an affidavit or a portion thereof lies in the trial court's sound discretion. *Aerel S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 906 (6th Cir. 2006). Rule 56(e) requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). These requirements are mandatory. *See also Harrah's Entm't Inc. v. Ace Am. Ins. Co.*, 100 F. App'x 387, 394 (6th Cir.2004) ("It is well settled that courts should disregard conclusions of law (or 'ultimate fact') found in affidavits submitted for summary judgment."); *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 495

4

(6th Cir.2002) (affidavit must be based on personal knowledge, not hearsay or inadmissible evidence). Affidavits that do not satisfy the requirements of Rule 56(e) are subject to motions to strike. *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F. Supp. 2d 948, 954 (S.D. Ohio 2000).

Moreover, "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986). When faced with a request to strike a post-deposition affidavit, this Court "must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony." *Aerel, S.R.L*, 448 F.3d at 908. If such a contradiction is found, this Court must strike the affidavit "unless the party opposing [] provides a persuasive justification for the contradiction." *Id*. If there is no direct contradiction, the district court "should not strike or disregard that affidavit unless the court determines that the affidavit constitutes an attempt to create a sham fact issue." *Id*. (citation omitted).

Stout contends that Baumgartner's second affidavit contradicts her deposition testimony. During her deposition, Baumgartner testified to the following:

> Q: How is the performance of a personal lines assistant measured?
>
> A: It is measured in a few different ways. We perform audits on employees as well as just making sure that the volume of their work is being completed in a timely manner.
>
> Q: Are all employees audited?
>
> A: Yes.

5

> Q: All right. How often are aud -- the audits conducted?
>
> A: Very regularly within the first year of employment. Um, after that, it gets a little more sparse.
>
> Q: Okay. When you say regularly, is -- are we talking once a month? Once every two weeks?
>
> A: Depends on the employee, how many mistakes are caught in the audits. If there's continuous mistakes being made, the -- the more the audits occur.

(Doc. 18, Baumgartner Dep. at 48:23–49:15, PageID 420–21). In her affidavit, Baumgartner avers that:

> Berry insurance has not received any customer complaints related to the work of Kim Bolin[, the current personal lines assistant]. She passed her licensing exam on the first attempt, and we have not had any issues with her work performance. As a result, there have not been any audits performed on Ms. Bolin.

(Doc. 26-1 at ¶ 6). Stout contends the Court should strike Baumgartner's affidavit based on these contradictory statements. (Doc. 30 at 3–5).

Berry argues these are not contradictory statements, but rather Baumgartner is supplementing her deposition testimony. (Doc. 33 at 3). Berry argues that Baumgartner further testified at her deposition that she was not responsible for deciding who and when to audit, being the responsibility of Meredith. (*Id*. at 3–4). And, because Meredith testified that there was no regular way to audit an employee, Baumgartner's deposition testimony does not contradict prior evidence. (*Id*. at 4).

The Court declines to strike the entirety of Baumgartner's second affidavit. The Court does, however, strike Paragraph 6 of Baumgartner's second affidavit. This

6

paragraph <u>directly</u> contradicts Baumgartner's deposition testimony. Baumgartner, in clear terms, testified at her deposition that <u>all</u> employees are audited. Although Baumgartner then discusses the regularity of audits, her second affidavit directly contradicts her statement that <u>all</u> employees are audited because she avers that a specific Berry employee was never audited.[2]

Accordingly, Stout's motion to strike is **GRANTED IN PART** and **DENIED IN PART**. Paragraph 6 of Baumgartner's second affidavit is hereby **STRICKEN**.

### III. MOTION FOR LEAVE TO FILE SUR-REPLY

As a second initial matter, the Court considers Stout's request for leave to file a sur-reply. Stout requests leave: (1) to reply to Berry's statement of proposed undisputed facts, presented for the first time with its reply; and (2) to respond to the new facts and legal arguments presented for the first time in Berry's reply. (Doc. 30). Berry does not oppose Stout responding to its untimely statement of proposed undisputed facts. Berry, however, contends that the facts and arguments in its reply are not new, thus any new legal arguments presented by Stout in a sur-reply should be denied. (Doc. 33).

The Local Civil Rules permit the filing of a motion and memorandum in support, a memorandum in opposition, and a reply memorandum. S.D. Ohio Civ. R. 7.2(a)(1), (2). "No additional memoranda beyond those enumerated will be permitted except upon leave

---

[2] The Court is also unpersuaded by Berry's argument that Baumgartner's second affidavit is supplementing Meredith's testimony and that the Court should weigh Meredith's testimony regarding audits more favorably because Baumgartner testifies that audits are Meredith's responsibility. First, the analysis of whether to strike a post-deposition affidavit is whether the affidavit contradicts that specific witness's prior testimony, not the evidence as a whole. Second, weighing the credibility of the audit testimony of Baumgartner versus Meredith is not the province of this Court, it is the province of the jury.

of court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(2). Generally, "good cause" exists where the reply brief raises new grounds that were not included in movant's initial motion. *NCMIC Insurance Co. v. Smith*, 375 F. Supp. 3d 831, 836 (S.D. Ohio 2019); *see also Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003) (generally a court will grant leave to file a sur-reply "[w]hen new submissions and/or arguments are included in a reply brief, and a non-movant's ability to respond to the new evidence has been vitiated.").

Here, for the first time on reply, Berry argues that its audit process was not a pretext for Stout's alleged discrimination. (Doc. 26 at 7). Berry discusses its audit process, the auditing of specific employees, and attaches the Baumgartner Affidavit, discussed *supra*, to support its arguments that the audit leading to Stout's termination was not pretextual, and that the audit process cannot create a genuine dispute of fact. Stout should be given the opportunity respond to this new information and the facts presented by Baumgartner in her second affidavit.

Accordingly, the motion for leave to file a sur-reply is **GRANTED**. The Court will consider Stout's sur-reply, attached to her motion for leave (Doc. 30-2), for purposes of this Order.

### IV. MOTION FOR SUMMARY JUDGMENT

**A. Standard of Review**

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex*

8

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

**B.     Analysis**

Berry moves for summary judgment on both of Stout's claims: (1) disability discrimination under the Americans with Disabilities Act and Ohio law; and (2) retaliation under the ADA and Ohio law. Disability claims under state and federal law are analyzed on the same basis. *Johnson v. JPMorgan Chase & Co.*, 922 F. Supp. 2d 658, 666 n.6 (S.D. Ohio 2013); *Esparza v. Pierre Foods*, 923 F. Supp.2d 1099, 1104 (S.D. Ohio 2013). Accordingly, the Court analyzes the state and federal claims together.

**1.     Disability Discrimination Claim**

Disability discrimination claims follow the familiar burden-shifting analysis delineated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The burden is initially on a plaintiff employee to provide a prima facie case for discrimination. *Id*. at 802. To establish a prima facie case of disability discrimination under the ADA, Stout must show that (1) she is disabled; (2) she is

otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) similarly situated non-disabled employees were treated more favorably. *Gamble v. JP Morgan Chase & Co.*, 689 Fed. App'x. 397, 402 (6th Cir. 2017). If the plaintiff does so, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for its actions. *McDonnell*, 411 U.S. at 802. If the employer does so, then the burden shifts back to the plaintiff to demonstrate that the employer's offered nondiscriminatory reasons for acting were merely pretext for discrimination. *See id*. at 802–03.

Here, the parties only argue the third shift of the *McDonnell Douglas* framework: whether Berry's nondiscriminatory reason for terminating Stout's employment (her job performance) was merely a pretext for discrimination. Thus, for the purposes of this Order, the Court considers the first two shifts undisputed.

A plaintiff may establish that a reason for termination is pretextual "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). The Sixth Circuit, however, stresses, that these factors serve only as a tool to assist the court in addressing the ultimate inquiry: "did the employer fire the employee for the stated reason or not?" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009).

Stout asserts various arguments and facts in support of pretext; however, the Court finds her arguments fall into two main categories: (1) showing pretext through Berry's dissimilar treated of Stout; and (2) temporal proximity combined with other evidence.

The Court first considers Stout's argument that she was treated differently than other non-disabled employees. To establish such pretext, the plaintiff demonstrates that: (1) she was treated differently than a non-protected employee, and (2) "that he or she is similarly situated to the non-protected employee in all *relevant* respects." *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002) (citing *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (emphasis in original).

Stout argues that Berry performed targeted audits of her work, treating her differently than other employees. Although Berry employees testified that they audited employees to check their work, throughout the course of this litigation, Berry could only point to the auditing of one other employee, Tiffany Estridge. (Doc. 25 at 6). And, compared to the results of Estridge's audits, Stout contends her error rate was less than Estridge, yet Estridge was promoted and was not audited again. (*Id.* at ¶ 7).

Berry, via the second Baumgartner affidavit and Meredith's testimony, attempts to show that, in reality, not all employees are audited, only those with performance issues.[3] (Doc. 26-1). Moreover, although other employees may not have been audited in the same manner as Stout, other employees received reviews. (Doc. 26 at 8). Berry also suggests

---

[3] Changing explanations may also support a finding of pretext. *Merendo v. Ohio Gastroenterology Grp., Inc.*, No. 2:17-CV-817, 2019 WL 955132, at *12 (S.D. Ohio Feb. 27, 2019) (citing *Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 523 (6th Cir. 1997)) ("Inconsistent or contradictory statements from an employer could cast doubt on the employer's motivation, giving rise to an inference of pretext.")

Estridge and Stout are not similarly situated because Estridge passed her licensing exam, began training to be an account manager, her performance improved, and Berry never received complaints about Estridge's work. (*Id.*) Berry also argues that Estridge's errors occurred in the few months of employment, providing no weight to that evidence. Thus, Berry contends that Stout was audited because of continued errors and performance issues, and Berry's treatment of Stout was not related to her medical condition.

Although Berry attempts to show that Stout was not treated differently than other employees and that Stout and Estridge are not similarly situated, there are factual disputes contained in this analysis. Baumgartner and Meredith both provide testimony about Berry auditing its employees to ensure performance. However, Stout disputes this by pointing to the fact that Berry only produced evidence of auditing her and Estridge. And, even comparing Stout and Estridge, both Personal Lines Assistants audited by Berry, Stout argues she was treated less favorably than Estridge.

In sum, these facts show a genuine dispute concerning Berry's treatment of Stout compared to similarly situated, nonprotected employees. And, viewing the evidence in light most favorable to Stout, Berry's dissimilar treatment could evidence pretext.

Temporal proximity combined with other evidence also supports a finding of pretext. The Sixth Circuit "is clear that temporal proximity cannot be the **sole** basis for finding pretext." *Donald v. Sybra, Inc.*, 67 F.3d 757, 762 (6th Cir. 2012) (citing *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 317 (6th Cir. 2001) ("temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual"))

(emphasis added). However, the Sixth Circuit has found that "'suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence.'" *Id*. (citing *Bell v. Prefix, Inc.*, 321 Fed. App'x 423, 426 (6th Cir. 2009)).

In this case, temporal proximity is a contributing factor. Stout argues that Berry terminated her employment one day after Stout informed Baumgartner, providing a doctor's note, that she would need to take additional leave time for medical visits to receive treatment for her condition. (Doc. 25-2 at ¶ 3). Thus, the February 25th audit was performed to find a reason to terminate her. Stout also contends that, despite Berry's practice of auditing new employees, she was not audited until *after* she underwent brain surgery and started taking medical leave, over six months into her employment. (*Id*.) Then, after her brain surgery and after updating Berry on her medical condition, her audits increased.

Stout also evidences that Berry never informed Stout that she was not meeting expectations. (*Id*. at ¶ 4; Doc. 25 at 14). If anything, Stout's performance was equal to that of other employees in the same position and satisfactory. (Doc. 25-2 at ¶ 6). Moreover, if Berry was having issues with Stout's work, Berry did not follow its handbook with respect to giving Stout performance reviews. (*Id*. at ¶ 5). Thus, the temporal proximity, combined with other evidence cited by Stout, demonstrate Berry's proffered reason for terminating Stout is pretext.

Based on the foregoing, a reasonable juror could find that Berry's non-discriminatory explanation pretextual. Berry's motion for summary judgment on Stout's disability discrimination claim is **DENIED**.

### 2. Retaliation Claim

Stout's retaliation claims falls under the same burden shifting analysis: (1) Stout must prove a prima facie case of discrimination; (2) Berry must then offer a legitimate, nondiscriminatory reason for its action; and (3) Stout then must prove the Berry's purported reason is a pretext. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001) (applying *McDonnell Douglas* framework to retaliation claim). "A prima facie case of retaliation has four elements: 1) the plaintiff engaged in legally protected activity; 2) the defendant knew about the plaintiff's exercise of this right; 3) the defendant then took an employment action adverse to the plaintiff; and 4) the protected activity and the adverse employment action are causally connected." *Id*. (citing *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987)). The Sixth Circuit has characterized this as "low hurdle." *Id*. at 551.

Berry only makes one argument as to why Stout's retaliation claim must fail as a matter of law.[4] Berry argues that Stout cannot satisfy the fourth prong: causal connection between Stout's protected activity (requesting medical accommodation) and the adverse action (her termination). (Doc. 19 at 15). Berry argues that there can be no causal connection because Berry could have terminated Stout after any of her mistakes; thus, Berry had no retaliatory motive. (*Id*.). In sum, Berry is arguing there was no causal connection because it had a legitimate reason for terminating her employment.

---

[4] Berry, for the first time on reply, attempts to argue the burden-shifting framework. As with the disability discrimination claim, there are genuine disputes of facts related to Berry's pretext, and this argument fails.

14

Berry's analysis misapplies the *McDonnell Douglas* burden-shifting framework. Berry's purported nondiscriminatory and legitimate reason for terminating Stout plays no part in Stout's prima facie case of retaliation. "A plaintiff may demonstrate the causal connection by the proximity of the adverse employment action to the protected activity." *Gribcheck*, 245 F.3d at 551. "'Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.'" *Bennett v. Bd. of Educ. of Washington Cty. Joint Vocational Sch. Dist.*, 785 F. Supp. 2d 678, 686 (S.D. Ohio 2011) (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir.2008)).

Here, Stout updated Berry on February 25 of her medical condition and notified Berry, with a doctor's note, that she would need to take leave to attend medical appointments. Stout was terminated the following day. "Time spans between protected activity and retaliatory action significantly longer than the single day alleged by the Plaintiff have been held to be sufficient standing alone to support a plaintiff's prima facie case of retaliation." *Id*. at 687 (collecting cases). This temporal proximity raises the inference that Stout's notice to Berry was likely the reason for her termination.

Accordingly, Berry's lone argument against Stout's retaliation claim – that she cannot establish the causal connection of her *prima facie* case – fails. Berry's motion for summary judgment on Stout's retaliation claim (Count II) is **DENIED**.

### 3. After-Acquired Evidence

Berry last argues that, should the Court deny its motion for summary judgment, the Court should provide an order, limiting Stout's damages based on after-acquired evidence. Berry states that, at Stout's deposition, it learned that Stout lied on her employment application; and, had Berry known this, it never would have hired Stout.

Under the after-acquired evidence doctrine, evidence of an employee's misconduct that comes to light after the employee's termination may constitute an independent ground for termination and bar damages against the former employer. *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362-63 (1995). Where the former employer demonstrates that an employee would have been terminated anyway had the employer known of the wrongful conduct by the employee, the employee's damages are limited from the time of the unlawful, discriminatory discharge to the date the employer learned of the misconduct. *Id*. at 361-62. An employer relying on after-acquired evidence of wrongdoing must establish: (1) that the wrongdoing in fact occurred; and, (2) that the wrongdoing was of such severity that the employee in fact would (not could) have been terminated. *See Wehr v. Ryan's Family Steak Houses, Inc.*, 49 F.3d 1150, 1154 n.5 (6th Cir. 1995) (internal quotation and citation omitted).

The Court finds this a determination of fact, which is the province of the jury. *Oster v. Huntington Bancshares Inc.*, No. 2:15-CV-2746, 2017 WL 2215462, at *23 (S.D. Ohio May 19, 2017) (denying summary judgment on after-acquired evidence because issues of fact). Accordingly, Berry's request for an order limiting Stout's damages based on after-acquired evidence is **DENIED**.

16

## IV. CONCLUSION

Based upon the foregoing, Defendant Berry Insurance Company's motion for summary judgment (Doc. 19) is **DENIED**. Plaintiff Stout's motion to strike (Doc. 30) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff Stout's motion for leave to file a sur-reply (Doc. 30) is **GRANTED**.

**IT IS SO ORDERED.**

Date: 8/17/2021

*s/Timothy S. Black*
Timothy S. Black
United States District Judge